A03A0356. DEMIDO v. WILSON et al.
(582 SE2d 151)

ANDREWS, Presiding Judge.

James Demido appeals pro se from the trial court's grant of partial summary judgment in favor of Interland, Inc.; from total summary judgment in favor of Interland employees, Jonathan B. Wilson and H. Christopher Covington; and from the court's denial of his

request to extend the time for discovery. For the following reasons, we affirm.

Demido, a computer consultant, purchased "colocation" services from Interland whereby Interland housed Demido's computer server in its data center and provided electrical power and other services to enable the server to be continuously operated from that location. Demido's server was housed in an enclosure with six other servers of the same model and appearance also colocated at Interland. The other six servers belonged to John Kotmair, but were maintained by Demido under a consulting agreement with Kotmair.

In a suit filed in Fulton County Superior Court in April 2001, but not the subject of the present appeal, Demido sued Kotmair for money claimed due under the consulting agreement, asserted a lien pursuant to OCGA § 44-14-363 over Kotmair's six servers, and obtained a temporary restraining order (TRO) prohibiting the servers from being removed from the jurisdiction of the court. Kotmair subsequently terminated the colocation services with Interland for his six servers, and a written agreement was prepared by Interland which recognized that Kotmair had paid for all colocation services rendered and was entitled to possession of his servers. The agreement also recognized the existence of the TRO in Demido's pending suit and stated that Kotmair was aware he was bound by the provisions of the TRO. This agreement was prepared by Wilson, the Assistant General Counsel for Interland, and signed by Covington, the General Counsel for Interland.

When Kotmair sent a representative to pick up his six servers, an Interland employee, Amanda Furr, whose job was to assist customers with retrieval of servers, gave the representative not only Kotmair's six servers but also Demido's server, all of which were housed together in the same enclosure. Soon thereafter Demido was unable to contact his server during an equipment check, and he contacted Interland to investigate the problem. He discovered that his server was missing and was told by Interland that it had mistakenly given his server to Kotmair when Kotmair terminated services and took possession of his servers.

Interland attempted but was unable to obtain the return of Demido's server. Demido then filed the pro se suit the subject of the present appeal in June 2001 in Fulton Superior Court against Interland, Wilson, Covington, Kotmair, and others. He sought damages for the loss of the server for which he had paid $6,600, consequential damages of $296,000 including lost profits, $100,000,000 in punitive damages, and expenses of litigation pursuant to OCGA § 13-6-11. In a thirteen-count complaint, Demido alleged (1) conversion of his server; (2) conversion of files on his server; (3) trespass on his server; (4) trespass on his server files; (5) tortious interference with his busi-

ness; (6) tortious interference with contractual relations; (7) conspiracy to violate his lien on Kotmair's six servers; (8) conspiracy to violate the TRO over Kotmair's six servers; (9) conspiracy to convert his right to possess Kotmair's six servers; (10) negligent loss of his server; (11) breach of the contract to colocate his server; (12) the right to punitive damages; and (13) the right to expenses of litigation.

The trial court granted partial summary judgment in favor of Interland eliminating all of the counts against Interland, including the claims for punitive damages and expenses of litigation, except Counts 10 and 11 alleging negligence and breach of contract. The court also granted summary judgment in favor of Interland on Demido's claim for lost profits, but denied summary judgment as to other compensatory and consequential damages. The trial court granted summary judgment in favor of Interland employees, Wilson and Covington, on all of Demido's claims. Finally, the trial court denied Demido's request to extend the time for discovery. Demido appeals claiming the trial court erred by granting partial summary judgment in favor of Interland and total summary judgment in favor of Wilson and Covington, and by denying him an extension of discovery.

1. We find no error in the trial court's grant of partial summary judgment in favor of Interland.

Demido failed to produce evidence supporting his allegations in Counts 1 through 9 that Interland, by the actions of its employees, committed various intentional torts and conspired against him when it released his server to Kotmair along with Kotmair's six servers. Demido alleged that, when Wilson prepared and Covington signed the agreement terminating Kotmair's colocation services and releasing Kotmair's six servers with knowledge of his pending suit against Kotmair and the TRO, this was evidence sufficient to support a reasonable inference that Interland: (1) intentionally converted and trespassed on his server by giving it to Kotmair; (2) intentionally interfered with the business he intended to operate from his server and related contracts; (3) conspired to convert his right to possession of Kotmair's six servers; and (4) conspired with Kotmair to violate the TRO and his asserted lien over Kotmair's servers. To the contrary, these allegations are baseless supposition without support in the record.

The written agreement prepared by Wilson and signed by Covington for Interland dealt only with terminating colocation services for Kotmair's six servers and made no mention of Demido's server. Neither Wilson nor Covington was present when Kotmair's representative came to pick up the six servers, and there is no evidence that they intended to release Demido's server to Kotmair. Furr, the Interland employee in charge of the pickup, testified that she was told to

release Kotmair's servers to the representative, and that she mistakenly released Demido's server along with the six servers belonging to Kotmair. She said that, because Demido's server was in the same enclosure with Kotmair's servers and all the servers were of the same model and appearance, she mistakenly believed that all seven servers belonged to Kotmair.

Although there may be evidence supporting Demido's claims in Counts 10 and 11 that Interland negligently released his server or breached the colocation agreement by releasing his server, there is an absence of evidence sufficient to make a reasonable inference in support of the claims asserted in Counts 1 through 9. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). There is no evidence that Wilson, Covington, Furr, or any other Interland employee converted or trespassed on Demido's server by wrongfully assuming dominion or ownership over the server contrary to Demido's rights. *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 260-261 (356 SE2d 877) (1987). The evidence shows only that an Interland employee mistakenly believed Demido's server belonged to Kotmair and, based on that belief, mistakenly allowed Kotmair's representative to take the server from the data center. It follows that evidence showing only the mistaken release of the server is not sufficient to support claims that, by releasing the server, Interland committed other intentional torts by interfering with the business Demido intended to operate with the server or with contracts related to the business. *Perry & Co. v. New South Ins. Brokers &c.*, 182 Ga. App. 84, 89-90 (354 SE2d 852) (1987); *Nationwide Advertising Svc. v. Thompson Recruitment Advertising*, 183 Ga. App. 678, 679-680 (359 SE2d 737) (1987).

Moreover, there is no evidence that Interland, by the actions of its employees, conspired to convert Kotmair's six servers in violation of Demido's rights, or conspired to violate the TRO or to unlawfully interfere with a lien asserted by Demido over Kotmair's servers. Although Interland's employees took actions in concert with Kotmair which resulted in removal of the servers from the data center, there is no evidence of an underlying tort in these actions necessary to establish an unlawful civil conspiracy. *Ray v. Atkins*, 205 Ga. App. 85, 90 (421 SE2d 317) (1992). Assuming without deciding that Demido properly asserted a lien against Kotmair's servers, there is no evidence that he did so by retaining possession of the servers. See OCGA § 44-14-363. The evidence shows that Interland had possession of the servers pursuant to its colocation agreement until the agreement was terminated and Interland released the servers to Kotmair. Accordingly, there is no basis for Demido's claim that Interland conspired to convert a right of possession he acquired in the servers. *Trust Co. of Columbus v. Refrigeration Supplies*, 241 Ga. 406, 408-409 (246 SE2d 282) (1978). Furthermore, even if Demido

asserted a lien over the servers without retaining possession, Interland's release of the servers to Kotmair did not impair the lien. Finally, Interland had no right to retain possession of Kotmair's servers after Kotmair terminated the colocation agreement, so Interland's release of the servers to Kotmair did not violate the terms of the TRO, even if, as alleged by Demido, the servers were moved after the release in violation of the TRO.

The trial court also properly granted summary judgment in favor of Interland on Demido's assertion that he was entitled to damages for lost profits, punitive damages, and expenses of litigation. As to lost profits, there is no evidence in the record that the business Demido claims was damaged by loss of his server had ever made any profits. Demido testified that the business was in the start-up phase when the server was lost and that there had been no sales or profits. Without any record of profitability, Demido's claim was for expected profits, which are too uncertain and speculative to be recovered. *SMD, L.L.P. v. City of Roswell*, 252 Ga. App. 438, 441 (555 SE2d 813) (2001). Demido's claim for punitive damages under OCGA § 51-12-5.1 was properly dismissed as derivative of the intentional tort and conspiracy counts on which the court properly granted summary judgment. As to expenses of litigation sought by Demido under OCGA § 13-6-11, expenses and attorney fees may be recovered under this section "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." As a pro se litigant who was not an attorney, Demido was not entitled to recover attorney fees (*JarAllah v. American Culinary Federation*, 242 Ga. App. 595, 596 (529 SE2d 919) (2000)), and we find no abuse of discretion in the trial court's conclusion that there was a bona fide controversy between the parties which precluded the award of other expenses. *Read v. Benedict*, 200 Ga. App. 4, 6 (406 SE2d 488) (1991); *Sams v. Video Display Corp.*, 255 Ga. App. 478, 482 (566 SE2d 28) (2002).

2. For the same reasons set forth in Division 1, supra, Interland employees, Wilson and Covington, as individuals, were properly granted summary judgment on all counts and claims for damages on which Interland was granted summary judgment. The only claims on which Interland was not granted summary judgment were those set forth in Counts 10 and 11 alleging negligent loss of Demido's server (Count 10) and breach of the contract to colocate Demido's server (Count 11). Since no allegations were made against Wilson and Covington individually in Count 11, only Count 10 remains to be addressed.

There is nothing in the record which could support Demido's claim that Wilson or Covington negligently caused the loss of his server. Contrary to Demido's contention, Wilson's preparation of the

written agreement authorizing release of Kotmair's six servers and Covington's signature of the agreement do not provide sufficient circumstantial evidence to support his claim. The agreement did not authorize the release of Demido's server to Kotmair, and there is no evidence that Wilson or Covington had anything to do with the erroneous release. The trial court properly granted summary judgment to Wilson and Covington on all of the allegations made against them. *Lau's Corp.*, supra.

3. We find no abuse of discretion in the trial court's refusal to grant Demido's motion to extend the time for discovery. In denying Demido's motion for an extension, the trial court noted that the six-month time period for discovery set forth in Uniform Superior Court Rule 5.1 had expired. On appeal, Demido argues that the trial court should have granted his motion to reconsider its ruling because he needed the extension to inspect his server and Kotmair's six servers, which he states were first located in February 2002 after the discovery period expired. We note that Demido did not make this contention when he argued his original extension motion before the trial court on May 30, 2002. In any event, Demido did not need the aid of discovery processes to inspect his own server, and he failed to demonstrate how an inspection of Kotmair's servers could produce evidence necessary to establish his remaining claims. "A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown." *Woelper v. Piedmont Cotton Mills*, 266 Ga. 472, 473 (467 SE2d 517) (1996).

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED MAY 6, 2003 — ▉▉▉▉▉▉▉

James Demido, *pro se.*
Kilpatrick Stockton, Craig E. Bertschi, William H. Boice, Clinton F. Fletcher, for appellees.